UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| IN RE: G&S LIVESTOCK COMPANY, *Debtor.* | ) | |
| PAUL GIBSON, SR. & MELINDA HART, *Defendants-Appellants,* | ) | 2:12-cv-0095-JMS-MJD |
| *vs.* | ) | Bankruptcy Case No. 11-58007 |
| WILLIAM J. TUCKER, *Trustee, Plaintiff-Appellee.* | ) | |

**ORDER**

Appellants-Defendants Paul Gibson, Sr. ("Paul Sr.") and Melinda Hart (collectively, "Defendants") have filed a Notice of Appeal, [dkt. 4-1], from the Bankruptcy Court's order denying their Motion for Leave to File Appeal Pursuant to Bankruptcy Rule 8002(c)(2), [dkt. 1].[1] In addition to arguing that the Bankruptcy Court erred by finding that they did not possess the requisite level of excusable neglect to pursue a belated appeal, Defendants challenge the Bankruptcy Court's authority to enter final judgment on the fraudulent transfer claim that Trustee William J. Tucker (the "Trustee") brought against them. [Dkt. 9 at 4-10 (relying on *Stern v. Marshall*, 131 S.Ct. 2594 (U.S. 2011) (holding that although a bankruptcy court had the statutory authority to enter judgment on a state law counterclaim, it lacked the constitutional authority to enter final judgment under Article III of the United States Constitution)).]

[1] Although the motion for leave to appeal that the Defendants filed with the Bankruptcy Court is listed as a pending motion on this Court's docket, [dkt. 1], it is denied as moot because the bankruptcy court ruled on that motion in the order that is the subject of the Defendants' appeal, [dkt. 5-10].

For the following reasons, the Court concludes that although the Bankruptcy Court had the statutory authority to enter final judgment on the Trustee's fraudulent conveyance claim against the Defendants, it lacked the constitutional authority to do so under Article III of the United States Constitution. Because the constitutional authority at issue is not jurisdictional, however, and the Defendants either expressly or by their conduct consented to the Bankruptcy Court ruling on the Trustee's fraudulent transfer claim, the Court concludes that the Bankruptcy Court's judgment was final. The Court affirms the Bankruptcy Court's conclusion that the Defendants failed to show excusable neglect sufficient to file a belated appeal pursuant to Bankruptcy Rule 8002(c)(2). Accordingly, the judgment of the Bankruptcy Court is affirmed and the Defendants' appeal is dismissed with prejudice.

## I.
## BACKGROUND[2]

G & S Livestock Company ("G & S") was a wholesale hog dealer that operated in Indiana for almost 30 years, until it ceased doing business in August 2010. [Dkt. 14-6 at 2.] Paul Sr. started the business, and his son Paul Gibson, Jr. ("Paul Jr."), became active in the business in the mid-1980s. [*Id.*] G & S's business involved the purchase of hogs from suppliers, the sale and transportation of hogs to packers, the collection of invoices sent to packers, and the payment of hog suppliers and transportation costs. [*Id.*] Seven businesses (the "Petitioning Creditors") did business with G & S for many years, supplying it with hogs and transportation services. [*Id.*]

Between mid-July and mid-August 2010, G & S purchased and received hogs from the Petitioning Creditors at a cost of $1,116,311 and incurred transportation charges of $78,220.

[2] Because it will not review the merits of the underlying action, the Court presents the relevant facts the Bankruptcy Court found after conducting a trial on the Trustee's fraudulent conveyance claim against the Defendants. [Dkt. 14-6.]

[*Id.*]  G & S sold the hogs to a packer in New Jersey; however, G & S failed to pay the amounts owed to the Petitioning Creditors and, instead, abruptly closed its business.  [*Id.*]

On September 2, 2010, the Petitioning Creditors filed an involuntary petition against G & S.  [*Id.* at 3.]  The Bankruptcy Court entered a relief order on October 8, 2010, adjudicating G & S to be a Chapter 7 debtor partnership.  [*Id.*]  No party appealed the relief order.  [*Id.*]

The Trustee was appointed the Chapter 7 trustee on October 19, 2010, and filed an adversary proceeding against Paul Sr., Paul Jr., and Melinda Hart on February 7, 2011.  [Dkts. 14-2; 14-6 at 3.]  In relevant part, the Trustee alleged that during 2010, when it became apparent that G & S would not be able to repay its obligations to its creditors, Paul Sr. transferred all or a significant portion of his real estate to his girlfriend, Ms. Hart.  [Dkt. 14-2 at 4.]  The Trustee alleged that Paul Sr. received nothing in exchange for the transfer.  [*Id.*]  Additionally, the Trustee alleged that Paul Jr. transferred a 120-acre farm to Ms. Hart that had a value of at least $344,000 at the time of the transfer and that Paul Jr. received inadequate consideration in exchange.  [*Id.*]  Based on these allegations, the Trustee asserted a fraudulent transfer claim against Paul Sr., Paul Jr., and Ms. Hart, alleging that they violated Indiana Code §§ 32-18-2-14 and -15.  [*Id.* at 5.]  In relevant part, the Trustee requested that the Bankruptcy Court avoid and set aside the Gibsons' transfers to Ms. Hart.

In response to the Trustee's Complaint, the Defendants admitted the Bankruptcy Court's authority over the proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  [Dkt. 14-3 at 2.]  The Defendants again admitted the Bankruptcy Court's authority in their trial brief, filed in October 2011, in which they stipulated that the Bankruptcy Court "has jurisdiction over them as defendants and the matters contained therein pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334 and 11 U.S.C.§ 723(a)."  [Dkt. 14-5 at 3.]

The Bankruptcy Court conducted a trial on November 2, 2011, and the Defendants were present when the court announced its adverse ruling against them. [Dkts. 5-10 at 5; 14-6 at 1.] The Bankruptcy Court issued a written decision on December 15, 2011, finding that the Gibsons' transfers to Ms. Hart were voidable under 11 U.S.C. § 544(b) and Indiana Code § 32-18-2-15. [Dkt. 14-6 at 10.] The Bankruptcy Court entered final judgment the same day. [Dkt. 5-1.]

The Defendants admit that they received a copy of the Bankruptcy Court's order on or about December 19, 2011, but allege that their attorney did not inform them of the deadline for filing a notice of appeal, which was December 29, 2011. [Dkt. 1 at 1.] Instead, the Defendants met with five other lawyers regarding their right to appeal and, ultimately, retained counsel and sought leave to file a belated appeal on January 12, 2012. [Dkt. 1 at 1-2.] The Bankruptcy Court held a hearing on the Defendants' motion and issued a decision on February 24, 2012, denying their motion after finding that they failed to set forth sufficient evidence of excusable neglect as required by Bankruptcy Rule 8002(c)(2). [Dkt. 5-10 at 2, 8.] On March 8, 2012, the Defendants filed a notice of appeal from the Bankruptcy Court's decision denying their motion to file belated appeal.[3] [Dkt. 5-11.]

[3] Paul Jr. did not file a notice of appeal or seek leave to file a belated appeal from the adverse judgment of the Bankruptcy Court. Therefore, he is not a party to this appeal.

## II.
## DISCUSSION[4]

In addition to arguing that the Bankruptcy Court erred by concluding that they did not meet the standard for excusable neglect to file a belated appeal, the Defendants challenge the authority of the Bankruptcy Court to enter final judgment on the Trustee's fraudulent conveyance claim, relying on the recent decision of the United States Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (U.S. 2011) (holding that although a bankruptcy court had the statutory authority to enter judgment on a state law counterclaim, it lacked the constitutional authority to enter final judgment under Article III of the United States Constitution). [Dkt. 9.][5] After a lengthy overview of what they believe to be the applicable law, the Defendants succinctly argue that "it follows that the ruling of the Bankruptcy court on this matter [] is unconstitutional, as it has not been entered by an Article III judge, and there is no ruling yet for [the Defendants] to appeal." [*Id.* at 9.]

In response, the Trustee emphasizes that the Defendants challenge the Bankruptcy Court's authority for the first time on appeal. [Dkt. 17 at 8.] Therefore, the Trustee argues that even if the Bankruptcy Court lacked the authority to enter a final judgment, the Defendants consented to that court entering final judgment on the Trustee's fraudulent conveyance claim. [*Id.* at 12-17.] Accordingly, the Trustee asks this Court to find that the Bankruptcy Court had the au-

[4] Because the Court ultimately dismisses Defendants' appeal with prejudice, it denies as moot the Trustee's Motion to Dismiss the Appeal on the alternate ground that the Defendants did not comply with Bankruptcy Rule 8006 because they did not include a "statement of the issues to be presented" with their notice of appeal. [Dkt. 13.] The Trustee concedes that the Seventh Circuit Court of Appeals has "not squarely decided whether the failure to timely designate issues as mandated by Bankruptcy Rule 8006 results in the waiver of such issues," [dkt. 13 at 3], and it is unnecessary to decide this issue given that the Court dismisses the Defendants' appeal for other reasons.

[5] The Court directs defense counsel to Local Rule 5-1, which sets forth the expected format for filings, including that they be double spaced.

thority to issue final judgment and that the Defendants have not demonstrated excusable neglect to pursue a belated appeal. [*Id.* at 18-23.]

The Court must first determine whether the Bankruptcy Court had the statutory and constitutional authority to enter final judgment before addressing whether the Defendants possessed excusable neglect to pursue a belated appeal.

**A. Judgment on Fraudulent Transfer Claim**

*i. Applicable Law*

In *Stern v. Marshall*, the Supreme Court held that a bankruptcy judge lacked the authority under Article III of the United States Constitution to enter final judgment on a state law counterclaim at issue in the bankruptcy because the counterclaim constituted "the stuff of the traditional actions at common law" and "the responsibility for deciding that suit rests with Article III judges in Article III courts." 131 S.Ct. at 2609. The parties dispute whether that holding applies to the Trustee's fraudulent conveyance claim. [Dkts. 9; 17; 22.] Neither the Supreme Court nor the Seventh Circuit Court of Appeals has directly addressed this issue, and courts across the country are divided on it. *Cf. In re Canopy Fin., Inc.*, 464 B.R. 770 (N.D. Ill. 2011) (analyzing *Stern*'s rational and holding that it "made clear that the Bankruptcy Court lacks constitutional authority to enter final judgment" on fraudulent conveyance claims), *with In re Custom Contractors, LLC*, 462 B.R. 901 (B.R. S.D. Fl. 2011) (emphasizing the "narrow" scope of *Stern* and holding that fraudulent transfer actions, while possibly state law claims, "simply would not exist but for the bankruptcy" and, thus, "are core proceedings stemming from the bankruptcy itself for which [the bankruptcy court] has authority to enter final judgments"); *see also In re Agriprocessors, Inc.*, 2012 Bankr. LEXIS 3204, at *14-34 (Bankr. N.D. Iowa) (collecting cases and summarizing the

split of authority on post-*Stern* issues concerning fraudulent conveyance claims). An overview of the applicable law is necessary for the Court to address the legal issue this case presents.

a. Bankruptcy Statutory Scheme

With certain exceptions not relevant here, the district courts of the United States have "original and exclusive jurisdiction over all cases under title 11." 28 U.S.C. § 1334(a). Congress has divided bankruptcy proceedings into three categories—those that arise under Title 11, those that arise in a Title 11 case, and those that are related to a case under Title 11—and a district court may refer such cases to the bankruptcy judges in the district.[6] 28 U.S.C. § 157(a). District courts may withdraw a case or proceeding referred to the bankruptcy court "for good cause shown." 28 U.S.C. § 157(d).

The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceedings involved. *Stern*, 131 S.Ct. at 2603. In "core proceedings," bankruptcy judges may "hear and determine all cases" and "may enter appropriate orders and judgments." 28 U.S.C. §157(b)(1). Core proceedings include 16 different types of matters, including the counterclaim that was at issue in *Stern* (§ 157(b)(2)(C)) and the fraudulent transfer claim at issue herein (§ 157(b)(2)(H)). Parties may appeal final judgments in core proceedings to the district court, which reviews them under traditional appellate standards. *Stern*, 131 S.Ct. at 2603-04. If a bankruptcy judge determines that something is a non-core proceeding but is otherwise related to a case under Title 11, it may only submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). Under those circumstances, a district judge must enter final judgment after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* any matters to which a party timely objects. *Id.* With the consent of all

[6] Cases in this District are automatically referred to the United States Bankruptcy Court for the Southern District of Indiana pursuant to Local Rule 83-8.

parties, the district court may refer a proceeding related to a case under Title 11 to a bankruptcy judge to hear, determine, and enter appropriate orders and final judgment. 28 U.S.C. § 157(c)(2); *Stern*, 131 S.Ct. at 2606.

b. Supreme Court Precedent—*Stern* and *Granfinanciera*

In *Stern*, the respondent, Pierce Marshall, had filed a defamation claim in the bankruptcy proceeding of his stepmother, Vickie Lynn Marshall, claiming that his stepmother had falsely accused him of fraudulently manipulating his father's estate to prevent her from receiving her share of the inheritance. 131 S.Ct. at 2601. The stepmother asserted truth as a defense and filed a counterclaim against her stepson for tortious interference with the gift she anticipated receiving from her deceased husband's estate. *Id.* The bankruptcy court ruled in favor of the stepmother on both claims and awarded her hundreds of millions of dollars of damages on her counterclaim. *Id.* at 2596.

The Supreme Court first addressed the bankruptcy court's authority to enter final judgment both on the stepson's defamation claim (pursuant to 28 U.S.C. § 157(b)(5)) and the stepmother's counterclaim (pursuant to 28 U.S.C. § 157(b)(2)(C)). In holding that the bankruptcy court had the statutory and constitutional authority to enter final judgment on the stepson's defamation claim, the Supreme Court emphasized that § 157 "is not jurisdictional." *Stern*, 131 S.Ct. at 2606. Specifically, the Supreme Court emphasized that statutes should not be interpreted to create a jurisdictional bar when they are not framed as such, and, instead, the statute at issue "simply specifies where a particular category of cases should be tried." *Id.* at 2607. Accordingly, the Supreme Court held that the stepson had consented to the bankruptcy court's resolution of his defamation claim by filing a proof of claim, advising the bankruptcy court that the parties agreed for that court to resolve the claim, and not identifying any point in the record where he

argued to the bankruptcy court that it lacked the authority to adjudicate his claim.  *Id.*  Given the stepson's course of conduct before the bankruptcy court, the Supreme Court concluded that the stepson had "consented" to the bankruptcy court's resolution of his defamation claim.  *Id.* at 2608 (citing *United States v. Olano*, 507 U.S. 725, 731 (1993) ("No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.") (internal quotations omitted)).

As for the stepmother's tortious interference counterclaim, the Supreme Court held that although it was a core proceeding under 28 U.S.C. § 157(b)(2)(C) over which the bankruptcy court had statutory authority, the bankruptcy court lacked constitutional authority under Article III to issue judgment on that claim.  *Stern*, 131 S.Ct. at 2608.  The Supreme Court held that "Congress may not withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty."  *Id.* at 2609.  Specifically, when "a suit is made of the stuff of the traditional actions at common law . . . and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts."  *Id.* (citations omitted).

The Supreme Court held that the stepmother's counterclaim could not be a matter of public right to be decided outside the judicial branch.  *Id.* at 2611.  In so holding, the Court compared the stepmother's counterclaim to a fraudulent conveyance claim and cited its holding in *Granfinanciera, S.A. v. Nordberg*.  *Stern*, 131 S.Ct. at 2614 (citing 492 U.S. 33 (1989)).  Although *Granfinanciera* principally addressed the question of whether a defendant had a right to a jury trial in a fraudulent conveyance action that was a core proceeding, in holding that such a right did exist, the Supreme Court stated that

> matters from their nature subject to a suit at common law or in equity or admiralty lie at the "protected core" of Article III judicial power . . . . There can be little doubt that fraudulent conveyance actions by bankruptcy trustees—suits which . . . constitute no part of the proceedings in bankruptcy but concern controversies arising out of it—are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.

*Granfinanciera*, 492 U.S. at 56 (internal quotations and citations omitted); *see also Stern*, 131 S.Ct. at 2618 ("We see no reason to treat [the stepmother's] counterclaim any differently from the fraudulent conveyance action in *Granfinanciera*.").

As further support for its holding that the bankruptcy court did not possess constitutional authority to rule on the stepmother's counterclaim, the Supreme Court held that the counterclaim "does not flow from a federal statutory scheme" and is "not completely dependent upon adjudication of a claim created by federal law." *Stern*, 131 S.Ct. at 2614. Moreover, the Supreme Court found that the stepson did not consent to resolving his stepmother's counterclaim in the bankruptcy court proceedings. *Id.* Instead, it noted that "[w]hat is plain here is that this case involves the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." *Id.* at 2616 (original emphasis).

The Supreme Court cautioned that the question it was presented with was "a narrow one" and that it did not anticipate that its decision would "meaningfully change[] the division of labor" between the district courts and bankruptcy courts. *Id.* at 2620. Instead, the Supreme Court noted that no argument had been presented that the bankruptcy court could not hear the claims at issue and propose findings of fact and conclusions of law before the district court entered final judgment. *Id.* For those reasons, the Supreme Court concluded that "Congress, in one isolated

respect, exceeded [the limitations of Article III]" and that the bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on the creditor's proof of claim."  *Id.*

c.   Seventh Circuit Precedent—*Ortiz*

The Seventh Circuit Court of Appeals has had one opportunity to interpret and apply the Supreme Court's decision in *Stern*.  In *Ortiz v. Aurora Health Care, Inc.*, 665 F.3d 906 (7th Cir. 2011), the Seventh Circuit addressed the applicability of *Stern* to two class action lawsuits filed in bankruptcy court by debtors who had their health care records disclosed without their permission in previous bankruptcy proceedings.  The Seventh Circuit likened those claims to the stepmother's counterclaim in *Stern* and held that the claims at issue were "based on a state law that is independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy."  *Id.* at 909 (citing *Stern*, 131 S.Ct. at 2611).  While the Seventh Circuit confirmed that the issue addressed by *Stern* was "narrow," it analogized the counterclaim in *Stern* to the class action disclosure claims at issue therein and held that the bankruptcy judge lacked the constitutional authority under Article III to enter a final judgment on those claims.  *Ortiz*, 665 F.3d at 911, 914.

In support of its conclusion, the Seventh Circuit noted that like the counterclaim at issue in *Stern*, the class action claims in *Ortiz* involved private parties, interests defined by state law not historically determined by the executive or legislative branches, and claims that did not flow from a federal statutory scheme.  *Id.* at 914.  In sum, the Seventh Circuit held that *Stern* "reaffirmed that Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bank-

ruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* (original emphasis) (citing *Stern*, 131 S.Ct. at 2618).

Without ruling on the issue, the Seventh Circuit left open the possibility that parties could impliedly consent to the bankruptcy court's resolution of claims for which it lacked constitutional authority. *Ortiz*, 665 F.3d at 915 ("Yet given the debtors' motions for abstention and remand, we cannot find an implied consent to the bankruptcy judge's authority to resolve their claims. And even if we could find an implied consent on the debtors' part, we could not find that *all* parties consented because [the defendant] opposed the bankruptcy judge hearing the matter in its motion to withdraw [reference].") (original emphasis). Ultimately, because the bankruptcy court did not have the constitutional authority to enter final judgment and the Seventh Circuit is not authorized to review a bankruptcy judge's proposed findings of fact and conclusions of law, the appeal was dismissed. *Ortiz*, 665 F.3d at 915.[7]

*ii. Did the Bankruptcy Court Issue a Valid Final Judgment?*

*Stern* and *Ortiz* analyzed both the bankruptcy court's statutory authority and its constitutional authority to enter a judgment. *Stern*, 131 S.Ct. at 2605 (holding that the bankruptcy court

[7] The parties do not cite, and the Court was unable to find, any cases from this District Court interpreting or applying *Stern*. Even a search of the other districts in the Seventh Circuit only resulted in one district court case interpreting *Stern* in the context of a fraudulent transfer claim. Although it was issued before *Ortiz*, the Northern District of Illinois applied *Stern* to hold that while the bankruptcy court had statutory authority to rule on a trustee's fraudulent conveyance claim, it lacked the constitutional authority to do so. *In re Canopy*, 464 B.R. at 770 (analyzing *Stern* in conjunction with *Granfinanciera* and holding that "the Bankruptcy Court lacks constitutional authority to enter final judgment" on fraudulent conveyance claims). In ruling on a motion to withdraw the reference of the case to the bankruptcy court, the Northern District of Illinois concluded that in *Stern*, the Supreme Court "at least implied that the effect of its decision was to remove certain claims from the core bankruptcy" authority to enter final judgments and, instead, "relegate them to the category of claims that are merely related to bankruptcy proceedings" subject to being heard, but not finally decided, by bankruptcy courts. *Id.* at 774. Therefore, it denied the motion to withdraw the reference and ordered the bankruptcy court to propose findings of fact and conclusions of law on the issue. *Id.* at 775.

had the statutory authority to enter a final judgment on the counterclaim before concluding that it did not have the constitutional authority to do so); *Ortiz*, 665 F.3d at 912 (concluding that the unauthorized disclosure claims arose in the bankruptcy and, thus, were core matters over which the bankruptcy court had statutory authority to enter judgment before examining the bankruptcy court's lack of constitutional authority to do so). Therefore, this Court will first analyze whether the Bankruptcy Court had statutory authority to enter final judgment on the Trustee's fraudulent conveyance claim before turning to whether it had the constitutional authority to do so.

As for the Bankruptcy Court's statutory authority, 28 U.S.C. § 157(b)(2)(H) designates "proceedings to determine, avoid, or recover fraudulent conveyances" as "core proceedings" over which that court "may enter appropriate orders and judgments." Courts have held that even after *Stern*, a bankruptcy court retains statutory authority to enter final judgment on a trustee's fraudulent conveyance claim. *See, e.g.*, *In re Canopy*, 464 B.R. at 772. Neither the Defendants nor the Trustee argue that the Bankruptcy Court lacked the statutory authority to enter final judgment on the Trustee's fraudulent conveyance claim; instead, the parties focus on whether that court had the constitutional authority to do so after *Stern*. This Court concludes that the Bankruptcy Court had the statutory authority under 28 U.S.C. § 157(b)(2)(H) to hear, determine, and enter judgment on the Trustee's fraudulent conveyance claim.

Turning to the thornier question regarding whether the Bankruptcy Court had constitutional authority to enter final judgment on the Trustee's fraudulent conveyance claim, courts are split in the wake of *Stern* over whether to construe the Supreme Court's holding narrowly or apply it to other core bankruptcy proceedings deemed similar to the counterclaim at issue in *Stern*. *Cf. In re Safety Harbor Resort & Spa*, 456 B.R. 703, 718 (Bankr. M.D. Fl. 2011) (emphasizing the "narrow" holding of *Stern* and concluding that "the job of bankruptcy courts is to apply the

law as it is written and interpreted today" and not to extend *Stern* to other core proceedings "simply because dicta in *Stern* suggests the Supreme Court may do the same down the road"), *with In re Canopy*, 464 B.R. at 773 (applying *Stern* to a fraudulent transfer claim).  This Court is not without guidance in making this decision, however, because the Seventh Circuit Court of Appeals applied *Stern*'s holding to the disclosure claims at issue in *Ortiz* even though they did not arise under the same provision as the counterclaim in *Stern*.  *Ortiz*, 665 F.3d at 911, 914 ("Although the [Supreme] Court noted that the question presented was 'narrow,' it was quite significant as Congress 'may no more lawfully chip away at the authority of the Judicial Branch than it may eliminate it entirely.'") (quoting *Stern*, 131 S.Ct. at 2620).  Therefore, this Court will consider whether the Trustee's fraudulent transfer claim is analogous to the counterclaim addressed in *Stern*.

In explaining why the bankruptcy court lacked the constitutional authority to enter final judgment on the counterclaim in *Stern*, the Supreme Court expressly compared that claim to a fraudulent transfer claim, explaining that "fraudulent conveyance suits [are] 'quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res.'"  131 S.Ct. at 2614 (quoting *Granfinanciera*, 492 U.S. at 56); *see also Stern*, 131 S.Ct. at 2614 ("[the stepmother's] counterclaim—like the [trustee's] fraudulent conveyance claim at issue in *Granfinanciera*—does not fall within any of the varied formulations of the public rights exception in this Court's cases").  The Supreme Court explained that unless a statutory right is closely intertwined with a federal regulatory program that Congress has the power to enact, it must be adjudicated by an Article III court.  *Stern*, 131 S.Ct. at 2614 (citing *Granfinanciera*, 492 U.S. at 56).  The Supreme Court further noted that

it saw "no reason to treat [the stepmother's] counterclaim any differently from the fraudulent conveyance action in *Granfinanciera*." *Stern*, 131 S.Ct. at 2618; *see also* 131 S.Ct. at 2616 (referring to the counterclaim as "one at common law that simply attempts to augment the bankruptcy estate—the very type of claim that we held in [] *Granfinanciera* must be decided by an Article III court").

This Court concludes that by repeatedly analogizing the counterclaim in *Stern* to a trustee's fraudulent conveyance claim in *Granfinanciera*, the Supreme Court made clear that there is a constitutional right to have an Article III court enter judgment on a trustee's fraudulent conveyance claim.  Moreover, like the counterclaim at issue in *Stern*, the Trustee's fraudulent conveyance claim at issue herein "exists without regard to any bankruptcy proceeding."  131 S. Ct. at 2618; *see also Kirschner v. Agoglia*, 2012 U.S. Dist. LEXIS 65148, *13-14 (S.D.N.Y. 2012); *In re Southeastern Materials, Inc.*, 467 B.R. 337, 363 (Bankr. M.D.N.C. 2012).  Specifically, the bankruptcy reorganization plan was confirmed by the Bankruptcy Court before the Trustee filed his adversary proceeding, [dkt. 14-6 at 3], and the fraudulent conveyance claim is intended to increase payouts to creditors under the confirmed plan, not to hierarchically order the claims for a share of the bankruptcy res, *Stern*, 131 S.Ct. at 2614.  Although the Trustee cited an applicable bankruptcy statute as his authority for bringing the fraudulent conveyance claims against the Defendants, his Complaint confirms that he accused the Defendants of violating Indiana state law. [Dkt. 14-2 at 2 (citing Ind. Code §§ 32-18-2-14, -15).]

For these reasons, the Court concludes that the Bankruptcy Court lacked the constitutional authority to enter final judgment on the Trustee's fraudulent conveyance claim against the Defendants.

*iii. Did the Defendants Consent to the Bankruptcy Court's Final Judgment?*

The Trustee argues that even if the Bankruptcy Court lacked the constitutional authority to enter final judgment on the Trustee's fraudulent conveyance claim, the Defendants consented to the Bankruptcy Court's entry of that judgment. [Dkt. 17 at 12-17.] Therefore, the Trustee asks the Court to confirm that the Bankruptcy Court's judgment was final and, consequently, that the Defendants missed the deadline to file a timely notice of appeal. [*Id.*]

Defendants concede that they first challenged the authority of the Bankruptcy Court to enter judgment on the Trustee's fraudulent conveyance claim on appeal. [Dkt. 22 at 3 ("This issue has not been raised heretofore.").] Defendants contend, however, that the issue was never raised by either party in *Stern* and that, instead, "the [Supreme C]ourt took the matter *Sua Sponte* and ran with it." [*Id.*] The Defendants focus on "first year law that Subject Matter Jurisdiction is an issue that can be raised by any party at any time and [cannot] be waived by any party." [*Id.*]

The Defendants are correct that as a general matter, subject matter jurisdiction can be raised at any time and cannot be waived by a party. *See, e.g.*, *Travelers Prop. Cas. v. Good*, --- F.3d --- (7th Cir. 2012) ("Jurisdictional objections cannot be forfeited or waived, of course, for [a federal court] has an independent obligation to satisfy itself that federal subject matter jurisdiction exists."). The Defendants ignore, however, that the Supreme Court expressly held in *Stern* that the applicable statute is not jurisdictional. Specifically, the Supreme Court held that 28 U.S.C. § 157 "does not have the hallmarks of a jurisdictional decree" and that statutes should not be interpreted "as creating a jurisdictional bar when they are not framed as such." *Stern*, 131 S.Ct. at 2607. Instead, the Supreme Court noted that § 157 "allocates the authority to enter final judgment between the bankruptcy court and the district court . . . [and t]hat allocation does not implicate questions of subject matter jurisdiction." *Id.*

The Supreme Court further emphasized in *Stern* that the stepson did "not explain why that statutory limitation may not be waived" and ultimately concluded that by his conduct, he had "consented to the Bankruptcy Court's resolution of [his] defamation claim . . . ." *Id.* In so holding, the Supreme Court recognized consent as "the consequences of a litigant sandbagging the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* at 2608 (quotations omitted) (citing *Olano*, 507 U.S. at 731 ("No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.")). Moreover, although it did not find that the stepson consented to the bankruptcy court's resolution of his stepmother's counterclaim, the Supreme Court did not foreclose the possibility that consent was possible. *Stern*, 131 S.Ct. at 2614.

In *Ortiz*, the Seventh Circuit neither endorsed nor foreclosed the possibility of implied consent on claims where the bankruptcy court lacks the constitutional authority to enter final judgment. 665 F.3d at 915. The Seventh Circuit noted that 28 U.S.C. § 157(c)(2) allows the district court, "with the consent of all the parties," to refer a proceeding related to a case under Title 11 to the bankruptcy court to "hear and determine and to enter appropriate orders and judgments." *Id.* The Seventh Circuit compared that statutory scheme to a claim's resolution by a non-Article III judge, such as a magistrate judge. *Id.* (citing *Roell v. Withrow*, 538 U.S. 580, 583-87 (2003) (holding that consent to a magistrate judge's authority does not require compliance with specific procedures)). The Seventh Circuit noted that even if it could find an implied consent on the part of the debtors, it "could not find that *all* parties consented because [the defendant] opposed the bankruptcy judge hearing the matter in its motions to withdraw [the reference]." *Ortiz*, 665 F.3d at 915 (original emphasis).

The case law summarized above suggests that it is possible for a litigant to consent to a bankruptcy court entering final judgment, and the Defendants concede that they challenge the authority of the Bankruptcy Court to enter final judgment for the first time on appeal.  [Dkt. 22 at 3.]  In fact, in response to the Trustee's Complaint, the Defendants admitted the Bankruptcy Court's authority over the proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  [Dkt. 14-3 at 2.] The Defendants again admitted the Bankruptcy Court's authority in their trial brief, filed nearly four months after *Stern* was issued, in which they stipulated that the Bankruptcy Court "has jurisdiction over them as defendants and the matters contained therein pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334 and 11 U.S.C.§ 723(a)."  [Dkt. 14-5 at 3.]  Although the Defendants improperly use the word "jurisdiction" in reference to § 157, which is not jurisdictional, *Stern*, 131 S.Ct. at 2607, they also reference 28 U.S.C. § 1334, which is a jurisdictional statute.  Legal semantics aside, the effect of the Defendants' admission is clear—they expressly submitted to the authority of the Bankruptcy Court to enter final judgment on the Trustee's claim.

Whether or not the Defendants' admission is tantamount to express consent, the Supreme Court has held that a party may forfeit a constitutional right by failing to make a timely assertion of that right.  *Stern*, 131 S.Ct. at 2608.  Allowing the Defendants to invalidate the adverse judgment of the Bankruptcy Court on the Trustee's fraudulent conveyance claim would contravene that principle and allow them to sandbag this Court, the Bankruptcy Court, and the Trustee by only raising the issue because the case did not conclude in their favor.  Accordingly, the Court holds that although the Bankruptcy Court did not have the constitutional authority to enter final

judgment on the Trustee's fraudulent conveyance claim pursuant to Article III, the Defendants consented to the entry of judgment and cannot now be heard to complain.[8]

**B. Motion for Leave to Pursue Belated Appeal**

The Bankruptcy Court entered judgment in this case on December 15, 2011. [Dkt. 5-1.] Because that judgment was final, the Defendants had fourteen days—until December 29, 2011—to file a notice of appeal. Bankruptcy Rule 8002. The Defendants did not file a notice of appeal by that deadline and, instead, sought leave to file a belated notice of appeal on January 12, 2012 (fourteen days late). [Dkt. 5-5.] Because this was less than twenty one days after the deadline, Bankruptcy Rule 8002(c)(2) allows such a motion to be "granted upon a showing of excusable neglect." The Bankruptcy Court held a hearing on the Defendants' motion and found that they had not shown excusable neglect pursuant to Rule 8002. [Dkt. 5-10 at 8.] It is that decision from which the Defendants appeal. [Dkt. 5-11.]

The parties dispute whether the Defendants possessed excusable neglect to pursue a belated appeal pursuant to Rule 8002(c)(2). The Defendants argue that the Bankruptcy Court erred in denying their motion because they attempted to obtain appellate counsel but were unable to do so until January 12, 2012, when they sought leave to appeal. [Dkt. 9 at 10.] They allege that their bankruptcy counsel did not inform them of the appellate deadline, that they will be severely prejudiced if they cannot appeal the underlying adverse judgment, and that the Bankruptcy Court did not consider all of the applicable factors when determining if excusable neglect was present. [*Id.* at 11; dkt. 22 at 4-5.]

[8] While this appears to be an issue of first impression in this District, the "overwhelming majority of courts" have held that parties can consent to a bankruptcy court because *Stern*-based objections do not challenge subject matter jurisdiction. *See In re Freeway Foods*, 466 B.R. 750, 770-71 (Bankr. M.D.N.C. 2012) (collecting cases).

The Trustee argues that the Defendants have not shown excusable neglect because they were present in court when the adverse ruling was announced, they admit that they received a copy of the adverse judgment before the appellate deadline passed, and that a misunderstanding or ignorance of the applicable rules does not constitute excusable neglect.  [Dkt. 17 at 18-23.]

This Court reviews a decision that a movant has not shown excusable neglect to pursue a belated appeal for an abuse of discretion.  *In re Singson*, 41 F.3d 316, 320 (7th Cir. 1994); *Sabo v. Montgomery*, 2008 WL 344549, *3 (S.D. Ind. 2008). An abuse of discretion will be found "only if no reasonable person could agree with the ruling."  *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 357 (7th Cir. 1997) (citation omitted).

The leading case on excusable neglect in the bankruptcy context broadened the definition of that term but emphasized that "'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.'"  *Sabo*, 2008 WL 344549 at *4 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Lim. P'shp*, 507 U.S. 380, 392 (1993)).  "[T]here is not a hard and fast rule in this circuit which bars a trial judge from exercising discretion to determine whether attorney negligence in missing a filing deadline may be deemed excusable neglect."  *Sabo*, 2008 WL 344549 at *4 (citing *Robb*, 122 F.3d at 361).  Instead, the relevant circumstances surrounding the omission in a particular case should be considered, including the danger or prejudice to the debtor; the length of the delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was in the reasonable control of the movant; and whether the movant acted in good faith.  *Robb*, 122 F.3d at 359 (citing *Pioneer*, 507 U.S. at 395).  "[A]t bottom, [the decision is] an equitable one."  *Pioneer*, 507 U.S. at 395.

It does not matter if the fault was caused by the attorney and not the party "because clients are accountable for the acts and omissions of their attorney."  *Sabo*, 2008 WL 344549 at *4

(citing *Matter of Bulic*, 997 F.2d 299, 302 (7th Cir. 1993)). Moreover, the excusable neglect standard "can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules." *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 133 (7th Cir. 1996).[9]

The Court finds that the Bankruptcy Court did not abuse its discretion by finding that the Defendants did not show excusable neglect to pursue a belated appeal. As the Bankruptcy Court noted in its decision, the Defendants were present at the hearing at which the adverse ruling was announced. [Dkts. 5-10 at 5; 14-6 at 1.] They were informed that the appellate deadline would begin to run after the Bankruptcy Court issued its judgment, [dkt. 5-10 at 6], and they admit that they received a copy of the Bankruptcy Court's adverse judgment about ten days before the appellate deadline passed, [dkts. 1 at 1; 5-10 at 5]. Although the Defendants concede that they were "acutely aware that there was [a deadline]" to appeal, [dkt. 9 at 10], they allege that they did not know the exact deadline, [*id.*]. Their assertion that their bankruptcy counsel did not inform them of the specific appellate deadline, even if true, does not establish excusable neglect because an inability or refusal to read and comprehend the plain language of the applicable rules is insufficient. *Prizevoits*, 76 F.3d at 133; *Sabo*, 2008 WL 344549 at *4.

Defendants further allege that they possess excusable neglect because they "were unable to obtain counsel until January 12, 2012." [Dkt. 9 at 10.] Their assertion that they were "unable" to obtain counsel until that date seems specious because they met with five lawyers before retaining appellate counsel, [dkt. 1 at 1], and they do not dispute that at least one of those lawyers offered to meet with them before the deadline expired but that they did not set up a meeting,

[9] Although *Prizevoits* was not a bankruptcy case, the Seventh Circuit cited *Pioneer* in *Prizevoits* to determine the standard for excusable neglect and held that the "the tenor of [*Pioneer*]" applied "throughout the federal procedural domain." *Id.* at 134.

[dkt. 5-10 at 6].  These facts suggest that, as the Bankruptcy Court concluded, the Defendants' failure to secure appellate counsel until mid-January resulted from their decision not to set up a timely meeting, which is not excusable neglect.

Finally, Defendants assert that the Bankruptcy Court failed to take into consideration all of the equitable factors the Supreme Court considered when setting forth the standard in *Pioneer*. [Dkt. 22 at 4-5.]  The Defendants emphasize their good faith effort to pursue their right to appeal and argue that the Bankruptcy Court failed to take into account the totality of the circumstances or the prejudice that will befall the Defendants if they cannot appeal the merits of the underlying judgment.  [*Id.*; dkt. 9 at 10, 12.]  The Defendants ignore, however, that the Bankruptcy Court recognized the size of the judgment but emphasized that the case had been pending for two years and that delaying the case further "will be prejudicial to the creditors of the estate, causing the Trustee to incur additional litigation expenses, thereby further diminishing the estate and harming the interests of the creditors."  [Dkt. 5-10 at 7.]  Moreover, the Defendants' decision to drag their feet meeting with appellate counsel can hardly be deemed a good faith effort to pursue a timely appeal.

As the Bankruptcy Court ultimately concluded, the Defendants had from November 2, 2011 (when the adverse judgment was announced) until December 29, 2011 (when the 14-day post judgment appellate deadline ran) to seek advice regarding their appellate options.  [*Id.*] They admit that they were present when the adverse judgment was announced, that they received a copy of the judgment before their time to appeal expired, and that they were aware that there was an appellate deadline, although they deny knowing the exact date of that deadline.  Based on the facts of this case, the Court concludes that the Bankruptcy Court did not abuse its discretion

by finding that the Defendants failed to show excusable neglect pursuant to Rule 8002(c)(2).[10] For these reasons, the Court affirms the judgment of the Bankruptcy Court and dismisses this appeal with prejudice.

## III.
## CONCLUSION

For the reasons contained herein, the Court concludes that based on *Stern*, *Granfinanciera*, and *Ortiz*, the Bankruptcy Court had the statutory authority to enter final judgment on the Trustee's fraudulent transfer claim against the Defendants but lacked the constitutional authority to do so pursuant to Article III. However, the Defendants either expressly or by their conduct consented to the Bankruptcy Court entering judgment on those claims. Therefore, the Bankruptcy Court's judgment, [dkt. 14-6], was final. Because the Court further concludes that the Bankruptcy Court did not abuse its discretion by finding that the Defendants did not possess excusable neglect to file a belated notice of appeal, the judgment of the Bankruptcy Court is affirmed and this appeal is **DISMISSED WITH PREJUDICE**. The Trustee's Motion to Dismiss Appeal for Failure to Comply with Bankruptcy Rule 8006 is **DENIED AS MOOT**. [Dkt. 13.] The Motion

---

[10] The Court notes that other courts have found excusable neglect to be lacking on more compelling circumstances than those presented by the Defendants in this case. *See, e.g.*, *In re HML II, Inc.*, 234 B.R. 67 (BAP 6th Cir. 1999) (holding that bankruptcy court did not abuse its discretion by denying motion to file belated appeal when failure to file timely appeal resulted from "unintentional oversight occasioned by [an] attorney's unfamiliarity with bankruptcy procedure"); *Sabo*, 2008 WL 344549 at *4 (affirming bankruptcy court's decision to deny untimely appeal even though counsel did not inform client of entry of adverse judgment because client was present at hearing where adverse ruling was announced); *In re Pyramid Energy, Ltd.*, 165 B.R. 249 (Bankr. S.D. Ill. 1994) (finding that creditor lacked excusable neglect to support belated appeal despite one-day delay in filing because the bankruptcy court announced its adverse ruling over a month before the written order was entered and the winter holidays did not constitute excusable neglect); *see also In re Heartland Mem. Hosp., LLC*, 473 B.R. 897, 903 (Bankr. N.D. 2012) (collecting twelve cases holding that mistake in calculating deadline "given that all necessary elements were present in order to properly calculate deadline and no exigent circumstances arose which prevented or impeded knowledge of that deadline has routinely been held to not be excusable neglect").

for Leave to Appeal, [dkt. 1], is also **DENIED AS MOOT** because it was ruled on by the Bankruptcy Court in the underlying proceedings and is erroneously listed as a pending motion on this Court's docket.

09/05/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

James P. Moloy
BOSE MCKINNEY & EVANS, LLP
jmoloy@boselaw.com

B. Scott Skillman
B. SCOTT SKILLMAN, P.C.
scott.skillman@gmail.com